*422 In an action, inter alia, for specific performance of a contract for the sale of real property, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Spinner, J.), dated May 10, 2007, which, upon an order of the same court dated April 3, 2007, inter alia, granting those branches of the defendants’ motion which were for summary judgment dismissing the complaint and on the fourth counterclaim declaring that the contract of sale dated February 28, 2002, is null and void, among other things, dismissed the complaint and declared that the contract of sale is null and void.
Ordered that the judgment is reversed, on the law, with costs, those branches of the defendants’ motion which were for summary judgment dismissing the complaint and on the fourth counterclaim declaring that the contract of sale is null and void are denied, the complaint is reinstated, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.
Since 1967 the defendants Edmund L. Kaufold and Florence E. Kaufold (hereinafter the Kaufolds) have been the owners of a 27-acre parcel of farmland located in the Town of Riverhead. On February 28, 2002 the Kaufolds entered into a contract for the sale of the property (hereinafter the contract) with the plaintiff Gendot Associates, Inc. (hereinafter Gendot) for the sum of $1.8 million. Gendot’s president and sole shareholder Gerald Simone executed the contract on behalf of Gendot. Gendot sought to develop the vacant land into a subdivision of at least 24 single-family lots, and agreed to pay the Kaufolds the additional sum of $55,000 for each additional lot greater than 24 that was approved by the Town.
The Town imposed a long-term moratorium on development, which was applicable to the Kaufolds’ property. Three years after the execution of the contract, Gendot, relying upon a rider to the contract, sought to close title on an “as is” basis despite its failure to obtain subdivision approval from the Town. The Kaufolds, believing that Gendot could not unilaterally close title without subdivision approval, refused to close and failed to appear at the scheduled closing. The Kaufolds contended that the *423 purchase price of the property was dependent upon the number of units that Gendot could build on the property, and that, without the Town’s subdivision approval, the price term of the contract was indefinite.
In 2005 Gendot commenced the instant action for specific performance of the contract and to recover damages for the Kaufolds’ alleged breach of contract. The Kaufolds interposed several counterclaims against Gendot alleging, inter alia, that the contract was null, void, and unenforceable because there were mutual mistakes as to the meaning of contract terms, there was no meeting of the minds as to the sale price, and the contract was unfair and unconscionable because their attorney Peter Danowski, who represented them during the contract negotiation and execution, had breached his fiduciary duty to them by failing to disclose his prior dealings and representations of Gendot and Simone in unrelated subdivision matters. It is undisputed that Danowski had informed the Kaufolds that he had represented Gendot in the past; however, the parties disagree as to the completeness of that disclosure, since there were ongoing matters in which Danowski represented Gendot.
The Supreme Court, while finding “a plethora of issues of fact to be decided after trial,” nonetheless granted those branches of the Kaufolds’ motion which were for summary judgment dismissing the complaint and on the fourth counterclaim declaring that the contract is null and void. It entered a judgment which, inter alia, declared that the contract is null and void, and dismissed the complaint “on the grounds of the existence of an undisclosed and impermissible conflict of interest” between Gendot and Danowski. We reverse.
The Supreme Court erred in granting that branch of the Kaufolds’ motion which was for summary judgment dismissing the complaint based on its conclusion that an impermissible conflict of interest existed that rendered the entire transaction unconscionable and void per se (cf. Hall Dickler Kent Goldstein & Wood, LLP v McCormick, 36 AD3d 757, 758 [2007]; Dominguez v Community Health Plan of Suffolk, 284 AD2d 294 [2001]). “A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made” (Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]). It requires “some showing of ‘an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party’ ” (id., quoting Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449 [1965]). If a contract is unconscionable, it is voidable, but it can nonetheless *424 be ratified (see King v Fox, 7 NY3d 181, 191 [2006]; McMahon v Eke-Nweke, 503 F Supp 2d 598, 603 [2007]).
“Where there is doubt, as in the case at bar, as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms’ setting, purpose and effect” (Davidovits v De Jesus Realty Corp., 100 AD2d 924, 925 [1984], citing State of New York v Wolowitz, 96 AD2d 47, 68-69 [1983]). Since there are unresolved, triable issues of fact as to, inter alia, contract interpretation and whether any conflict of interest on Danowski’s part resulted in the execution of a contract unconscionable to the Kaufolds, the Supreme Court erred in granting those branches of their motion which was for summary judgment dismissing the complaint and on the fourth counterclaim declaring that the contract is null and void (see Lawrence v Graubard Miller, 48 AD3d 1, 8 [2007]; cf Davidovits v De Jesus Realty Corp., 100 AD2d at 925). Lifson, J.E, Santucci, Balkin and Belen, JJ., concur.